UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORMA ALICIA M.,<br><br>                   Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security, [1]<br><br>                   Defendant. | Case No.: 20-cv-02260-KSC<br><br>**ORDER ON JOINT MOTION FOR JUDICIAL REVIEW**<br><br>**[Doc. No. 16]** |

On November 19, 2020, plaintiff Norma Alicia M. ("plaintiff") filed a complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of defendant's denial of his application for disability benefits. Doc. No. 1. Before the Court is the parties' Joint Motion for Judicial Review (the "Joint Motion" or "Jt. Mot."). Doc. No. 16. In the Joint Motion, plaintiff requests to have defendant's ("defendant" or the "Commissioner") determination that plaintiff is not disabled vacated; defendant seeks affirmance. The Court has carefully considered the parties' arguments, the applicable law, and the evidence in the record. For the reasons stated below, the decision of the Commissioner is **AFFIRMED**.

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Kilolo Kijakazi is substituted for Andrew Saul.

## I. BACKGROUND

### A. Plaintiff's Application for Benefits

Plaintiff suffers from fibromyalgia, chronic pain, diabetes, arthritis, and high blood pressure, and alleges that these ailments prevent her from working in her usual occupation as a grocery store cashier. *See* Jt. Mot. at 5 n.1.[2] On August 2, 2018, plaintiff applied for disability benefits, alleging a disability onset date of July 18, 2017. AR at 15. Her application was denied at the initial stage and upon reconsideration. *Id.* Plaintiff requested and received a hearing before an administrative law judge ("ALJ"). The hearing took place on April 10, 2020 and plaintiff appeared with her counsel.[3] *Id.* at 33-61. In a decision dated June 16, 2020, the ALJ concluded that plaintiff was not disabled within the meaning of the Social Security Act. *Id.* at 27. The Appeals Council denied review of the ALJ's decision on September 18, 2020, and the decision became final on that date. *Id.* at 1.

### B. Summary of the ALJ's Findings

The Administration employs a sequential five-step evaluation to determine whether a claimant is eligible for benefits under the Social Security Act (the "Act").[4] The ALJ who

---

[2] The Court adopts the parties' pagination of the Certified Administrative Record ("AR"). All other citations are to the page numbers generated by the Court's CM/ECF system.

[3] Due to the COVID-19 public health emergency, the hearing was held telephonically. *Id.*

[4] First, the ALJ must determine whether the claimant is engaged in substantial gainful activity. *Id.*, § 404.1520(a)(4)(i). Second, the ALJ must determine whether the claimant suffers from a "severe" impairment within the meaning of the regulations. *Id.*, § 404.1520(a)(4)(ii). Third, if the claimant suffers from a severe impairment, the ALJ must determine whether that impairment meets or is medically equal to one of the impairments identified in the regulations' Listing of Impairments. *Id.*, § 404.1520(a)(4)(iii). Fourth, if the impairment does not meet or equal a listing, the ALJ must determine the claimant's residual functional capacity ("RFC") based on all impairments (including those that are not severe) and whether that RFC is sufficient for the claimant to perform his or her past relevant work. *Id.*, § 404.1520(a)(4)(iv). At the fifth step, the ALJ must determine whether the claimant can make an adjustment to other work based on his or her RFC. *Id.*, § 404.1520(a)(4)(v).

adjudicated plaintiff's claim followed this five-step process in rendering his decision. *See generally* AR at 15-27. At Step One, the ALJ found plaintiff did not engage in substantial gainful activity from the alleged date of the onset of plaintiff's disability, July 17, 2018. *Id.* at 18.

At Step Two, the ALJ found that plaintiff had the following severe physical impairments: obesity, fibromyalgia, type 2 diabetes mellitus, diabetic polyneuropathy, lumbar osteoarthritis, cervical stenosis, cervical and lumbar radiculopathy, cervicalgia, status post right-hand fracture, degenerative joint disease of the right hand, and osteoarthritis of the right thumb.[5] AR at 18. The ALJ further found that these medically determinable impairments "significantly limit [plaintiff's] ability to perform basic work activities." *Id.* However, the ALJ found that plaintiff's alleged depression was not medically determinable. *Id.* As to plaintiff's bilateral cataracts and hypertension, the ALJ found that the evidence did not establish these impairments would have more than a minimal effect on plaintiff's ability to work, and therefore deemed them non-severe. *Id.*

At Step Three, the ALJ found that plaintiff's impairments, whether alone or in combination, did not meet or medically equal one of the impairments listed in the Commissioner's Listing of Impairments. *Id.* at 19.

Proceeding to Step Four, the ALJ found that plaintiff "has the residual functional capacity to perform light work" with these exceptions: "she is limited to frequent climbing of ramps and stairs, and occasional climbing of ladders, ropes, and scaffolds. She can frequently balance, stop, kneel, crouch, and crawl. She can frequently handle and finger with the right upper extremity." *Id.* at 20.

After consideration of plaintiff's testimony, her work history and daily activities, the longitudinal record and the medical opinions and prior administrative findings in the

---

[5] Plaintiff also reportedly suffers from bilateral cataracts, hypertension, and depression, but the ALJ determined that these ailments were either nonsevere or not medically determinable. *See* AR at 18.

record, the ALJ found "in sum . . . that the evidence of the claimant's daily activities along with the objective medical evidence . . . establishes [that] [plaintiff] has a greater sustained capacity than she alleges." AR at 25. Instead, the ALJ assessed that plaintiff was able to work "within the restrictions set forth in the above light residual functional capacity." *Id.* Based on her RFC, the ALJ further determined that plaintiff could not return to her previous work as a grocery store cashier. *Id.* at 26.

At Step Five, the ALJ considered plaintiff's age, education, work experience, and the above-described RFC and determined that there were "jobs that exist in significant numbers in the national economy that [plaintiff] can perform." AR at 26. In making this determination, the ALJ relied on the testimony of a vocational expert, who identified light-work positions that could be performed by a person with plaintiff's limitations.[6] *Id.* at 27; *see also id.* at 56-59 (vocational expert's hearing testimony).

Based on the foregoing analysis and findings, the ALJ concluded that plaintiff had not been under a disability within the meaning of the Act since July 18, 2017. *Id.* at 27. Accordingly, her application for benefits was denied. *Id.*

## II. DISPUTED ISSUES

The sole disputed issue is whether the ALJ "properly considered [plaintiff's] fibromyalgia and chronic pain testimony" in determining that she was capable of modified light work. Jt. Mot. at 4. Plaintiff claims that the ALJ improperly discounted plaintiff's symptom testimony and failed to provide "specific, clear and convincing reasons" for rejecting her subjective assessment of her limitations. *Id.* at 5-6. Plaintiff further asserts that the ALJ ignored that for fibromyalgia sufferers, "'mostly normal results'" on physical examination are common and conservative treatment of fibromyalgia is the norm. *Id.* at 7-8. Plaintiff also claims that the ALJ "failed to develop the record" regarding plaintiff's

---

[6] These included light work as a mail clerk (DOT #209.687-026), office helper (DOT #239.567-010), or marker (DOT #209.587-034).

daily activities and challenges his conclusion that plaintiff's improvement with the use of pain medication "translated to a sustained ability to work" as "lack[ing] any support from the record." *Id.* at 8-9. Plaintiff asserts that the ALJ reached his conclusion that she is not disabled by "isolat[ing] portions of the record" and "fill[ing] in the gaps," which is legal error. *Id.* at 10. Plaintiff requests reversal of the ALJ's decision and an award of benefits, or, in the alternative, remand to the Administration for further proceedings. *Id.* at 21.

Defendant argues that the ALJ "carefully consider[ed] all of the evidence," and reasonably "found that [while] the record did corroborate [p]laintiff's claims of functional limitations," it did not do so "to the disabling degree that she alleged." Jt. Mot. at 11-12. Defendant asserts that the ALJ properly concluded that plaintiff's treatment history, her demonstrated capabilities, and the medical evidence - including opinion evidence - "undermined" her claimed limitations. *Id.* at 12. Defendant disputes that plaintiff's fibromyalgia claim prevents the ALJ from considering the objective medical evidence. *Id.* at 15. Furthermore, defendant points out that while plaintiff "focus[es] only on [her] fibromyalgia," she alleged a host of impairments and does not offer any reason why the ALJ's assessment of these conditions in the context of the medical record was improper. *See id.* at 14-15. In sum, Defendant argues that plaintiff has "not establish[ed] any error, let alone reversible error," and requests that the Court find the Commissioner's decision to deny benefits "supported by substantial evidence and free of legal error." *Id.* at 14, 21-22.

### III.    STANDARD OF REVIEW

The Commissioner's final decision "must be affirmed" if it is "supported by substantial evidence, and if the Commissioner applied the correct legal standards." *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Ford*, 950 F.3d at 1154 (citing *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). This Court must review the entire record and consider adverse as well as supporting evidence. *See Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). Where the evidence is susceptible of more than one rational interpretation, the Commissioner's

decision must be upheld. *See id*. However, the Court cannot uphold the Commissioner's decision for reasons "'the agency did not invoke in making its decision.'" *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). The Court may affirm an erroneous decision if it "is clear from the record that [the] error was inconsequential to the ultimate nondisability determination." *Robbins v. Comm'r, Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006).

## IV.   DISCUSSION

### A. The ALJ Properly Considered the Evidence in the Record

"The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). The crux of plaintiff's challenge to the ALJ's determination that she was not disabled is her charge that the ALJ failed to appreciate what the Ninth Circuit has deemed the "unique nature of the often-misunderstood condition of fibromyalgia." *David v. Kijakazi*, 2021 WL 6101257, at *2 (9th Cir. 2021) (unpublished).

The Administration has issued guidance for the evaluation of fibromyalgia-based disability claims. *See* Social Security Administration, Social Security Ruling 12-2p: Titles II and XVI: Evaluation of Fibromyalgia (2012) (hereafter "SSR 12-2p"). Fibromyalgia, the Administration explains, "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." *See id.* There is no objective test for fibromyalgia. *See David*, 2021 WL 6101257, at *2 (noting that the condition "is diagnosed based entirely on a patient's subjective reports"). For purposes of a disability claim, fibromyalgia is established through the patient's subjective reports of pain and corroborated by either a physical examination of so-called "tender points" or the "repeated manifestation" of certain coextensive conditions, together with evidence that other potential causes of the patient's symptoms have been ruled out. *See generally* SSR 12-2p. "In evaluating whether a claimant's residual functional capacity renders them disabled because of fibromyalgia, the medical evidence
///

must be construed in light of fibromyalgia's unique symptoms and diagnostic methods . . . ." *Revels v. Berryhill*, 874 F.3d 648, 662 (9th Cir. 2017).

This is not to say, however, that the ALJ is bound by a claimant's subjective testimony, or that it is improper for the ALJ to consider other medical and non-medical evidence to determine whether a claimant is rendered disabled by fibromyalgia. *See Diane B. v. Kijakazi*, No. 21-cv-00794-TSH, 2022 WL 94915, at *9 (N.D. Cal. Jan. 10, 2022) ("The Court is aware of no authority that requires an ALJ to give dispositive weight to [p]laintiff's symptom allegations simply because they were associated with fibromyalgia."). Indeed, SSR 12-2p directs the adjudicator to consider the "longitudinal records" to "establish[] both the existence and severity of the impairment." *See* SSR 12-2p; *see also Revels*, 874 F.3d at 663 (noting the importance of "looking at longitudinal records," since a person with fibromyalgia "may have 'bad days and good days'"). And, as with any other subjective report of a claimant's functional limitations, an ALJ evaluating a fibromyalgia-related disability claim must first determine whether there are "medical signs and findings" that show that the fibromyalgia could "reasonably be expected to produce" the alleged symptoms. *See* SSR 12-2p (citing SSR 96-7p). If so, the ALJ must then further determine whether the "objective medical evidence substantiate[s] the . . . statements about the intensity, persistence and functionally limiting effects" of the fibromyalgia. *Id.* The ALJ must "consider all of the evidence in the case record" when making this determination. *Id.*

Whatever the claimant's alleged impairments, the ALJ must provide "clear and convincing reasons" supported by substantial evidence to find the claimant's subjective limitations are overstated. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The requirement that the ALJ state with specificity the reasons for rejecting a claimant's subjective testimony "permit[s] the reviewing court to conclude that the ALJ did not arbitrarily discredit'" the testimony. *William A. v. Saul*, 433 F. Supp. 3d 1201, 1213 (D. Or. 2019) (citation omitted); *accord Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) ///

(noting that "the ALJ must provide sufficient reasoning" to "permit meaningful review" by the Court).

The Court finds that these requirements were met in the case at bar. To reiterate, plaintiff alleged she was "unable to work due to chronic pain associated with arthritis in her back, bulging discs in her neck, and fibromyalgia." AR at 21. Plaintiff testified that because of her impairments, she could neither sit nor stand for more than ten minutes at a time before needing to lay down, could not walk more than the distance to her mailbox, could not lift or grasp objects, and required the use of a cane or "walking stick" to walk. *See* AR at 43-52.

After reviewing the evidence in the record, the ALJ determined that plaintiff suffered from chronic pain attributable to her various impairments. *Id.* at 21. He further determined that plaintiff's impairments caused *some* limitation in her ability to engage in work-related activities. *Id.* However, the ALJ did not believe the evidence in the record supported her allegations as to the "intensity, persistence and limiting effects" of her chronic pain. *Id.* The ALJ detailed the record evidence that, in his assessment, undermined plaintiff's allegations of disabling pain. *Id.* at 21-25. In particular, the ALJ identified the following evidence that suggested plaintiff's alleged limitations were overstated: plaintiff's pain was effectively treated with medication and "managed through conservative measures;" the record demonstrated that findings on examination were largely "unremarkable;" her providers recommended she exercise and lose weight; and plaintiff's daily activities were "inconsistent" with her allegations of debilitating pain. *See, e.g.*, AR at 23-25.

The ALJ also considered the medical opinions and prior administrative findings in the record. *See* AR at 24-25. He found the March 2019 report of consultative examiner H. Samplay, M.D. persuasive, as it was supported by and consistent with the longitudinal record. *Id.* at 24; *accord* 20 C.F.R. § 404.1520c(b)(2); *id.* at § 404.1527(b) (requiring ALJ to evaluate medical opinion testimony for supportability and consistency). Dr. Samplay assessed that plaintiff was capable of light work and opined that plaintiff's testimony as to the severity of her symptoms was not supported by medical evidence. *See id.* at 83-84. The

ALJ found the opinions of plaintiff's treating physician, Dr. Clotfelder, and her treating chiropractor, Dr. Condon, were not persuasive. *Id.* at 24-25. The ALJ noted that the limitations attested to by Dr. Clotfelder were inconsistent with her own treatment notes and observed that they "appear to be based entirely on the claimant's subjective complaints." *Id.* at 25. The ALJ found the chiropractor's opinion that plaintiff "would have a very difficult time standing . . . [or] sitting at a computer for a prolonged period of time" (AR at 496-97) to be vague and inconsistent with the objective medical evidence. *Id.* at 25.

Nothing more was required of the ALJ. *See Connett v. Barnhart*, 340 F.3d 871, 873-74 (9th Cir. 2003) (finding ALJ properly rejected subjective testimony where the ALJ "stated which testimony he found not credible and what evidence suggested that the particular testimony was not credible"). Plaintiff complains that the ALJ's findings reflect a "fundamental lack of knowledge about fibromyalgia," which is "not an orthopedic issue." Jt. Mot. at 8, 10, 18-19. As defendants point out, however, plaintiff alleged disability not solely based on fibromyalgia but "due to a variety of other impairments," including osteoarthritis, degenerative disc disease and a previous fracture of her right hand, all of which caused her chronic pain. Jt. Mot. at 15. The Court finds no error in the ALJ's consideration of the relatively conservative treatment for these conditions and the lack of objective findings in the record to support the alleged limitations in determining whether plaintiff's symptom testimony was credible. *See Burch v. Barnhart,* 400 F.3d 676, 681 (9th Cir. 2005) (stating that the ALJ "is permitted to consider" the objective medical findings and treatment history in assessing the claimant's credibility).

As described above, the ALJ articulated numerous reasons to reject plaintiff's symptom testimony. The Court is not persuaded that by doing so, the ALJ improperly "isolate[d] portions of the record" and "fill[ed] in the gaps" to arrive at his RFC, Jt. Mot. at 10. To the contrary, the ALJ provided a thorough and detailed discussion of the evidence suggesting that plaintiff's testimony was not credible. *See* AR at 21-25. He was not required to explicitly address every item of evidence in the record. *See Howard ex rel. Wolff v. Barnhart,* 341 F.3d 1006, 1012 (9th Cir. 2003) (noting that "in interpreting the

evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence'") (citations omitted).

Plaintiff takes issue with the ALJ's interpretation of the record and argues that the evidence cited by the ALJ instead supports a finding of disability. *See* Jt. Mot. at 8-11, 19. But, it is not the role of this Court to "substitute its judgment" for the ALJ's. *Lewis*, 236 F.3d at 509. Even if, as plaintiff asserts, the evidence "may also admit … an interpretation more favorable to [plaintiff]," the ALJ's decision must be upheld where "the evidence is susceptible to more than one rational interpretation.'" *See Burch*, 400 F.3d at 680 (citations omitted). For the reasons stated, the Court finds that the ALJ's interpretation of the evidence is rational and his decision will not be disturbed. *Id*.

### B. Substantial Evidence Supports the ALJ's RFC Determination

Having found that the ALJ's assessment of the longitudinal record was not the product of legal error, the Court must nevertheless independently assess whether substantial evidence supports the ALJ's RFC determination. *Ahearn*, 988 F.3d at 1115. To that end, the Court has independently reviewed the administrative record, and concludes that substantial evidence supports the ALJ's determination that plaintiff could perform a modified range of light work and his subsequent conclusion that plaintiff was not disabled.

The objective medical evidence confirms plaintiff's obesity, fibromyalgia, diabetes, degenerative disc disease, arthritis, and fracture of her right hand. *See*, *e.g.*, AR at 298-301, 302-05, 306-09, 316-17, 332-33, 343, 404, 410, 444-47, 517. The record also reflects plaintiff's frequent complaints of moderate to severe pain in her neck, arms, wrist, and legs. *See id.* at 298-301, 302-05, 316-17, 492, 533, 551. Treatments for these conditions included medication, dietary changes and weight management, physical therapy, use of a TENS unit, hot/cold therapy, and chiropractic adjustments. *See*, *e.g.*, *id.* at 298, 302, 484, 492, 526, 533, 551.

Plaintiff received her primary medical care from Dr. Clotfelder, who managed plaintiff's diabetes, hypertension, obesity, and fibromyalgia and provided preventative care. Dr. Clotfelder's progress notes reflect that plaintiff often complained of pain,

although findings on physical examination were mostly normal, including at visits during which plaintiff was deemed "permanently disabled." *See, e.g.*, AR at 404, 425, 479, 492, 517, 529, 551. Dr. Clotfelder's notes also indicate that plaintiff's pain improved with medication. *See, e.g.*, AR at 396, 484, 530, 538, 551.

In March 2017, Dr. Clotfelder referred plaintiff to Dr. Adler, a pain management specialist. *See* AR at 306. Dr. Adler assessed plaintiff as suffering from chronic pain caused by fibromyalgia, diabetes mellitus with neuropathy, and cervical disc disorder. *See id.* at 309. He "discussed weight loss and exercise as important nonpharmacologic interventions," and prescribed Cymbalta. *Id.* Plaintiff reported that her symptoms improved with the medication, and in September 2017 Dr. Adler concluded that plaintiff "displayed overall an improvement in her functional outcome." *See id.* at 298, 300, 302.

On October 15, 2017, plaintiff fell and fractured her right hand. *See* AR at 345, 360-62. On October 26, 2017, Grant G. Seiden, M.D., performed surgery to repair the fractures of the third and fourth metacarpal shaft of plaintiff's right hand. *See id.* at 354-56. Dr. Seiden continued to provide plaintiff with post-operative care. *See id.* at 332-39 (progress notes from visits in October 2017, November 2017, December 2017, and March 2018). In Dr. Seiden's most recent progress note, dated March 12, 2018, he indicated that plaintiff was "doing excellently." AR at 333. Dr. Seiden stated at this final visit that plaintiff "[did] not have any formal restrictions" related to her right hand. *Id.*

There is also evidence in the record of plaintiff's daily activities, demonstrating that despite her complaints she can do light housework, prepare meals, grocery shop, drive a car, and climb stairs. *See* AR at 40, 49-52, 182-85. Plaintiff identified herself as her mother's "primary caregiver." *See* AR at 537; *id.* at 40-41. Plaintiff testified she hired a caregiver to assist with her mother's needs in 2019, but continued to prepare meals for her mother and to play games and go for walks with her. *See id.* at 41, 49.

The Court finds the foregoing is relevant and substantial evidence that is adequate to support the ALJ's determination that plaintiff's subjective limitations were not consistent with the objective medical evidence and plaintiff's self-reported ability to

perform daily activities. *See Ford*, 950 F.3d at 1154. The Court further finds the ALJ's conclusion, based on the RFC, that plaintiff was not disabled is supported by substantial evidence.

### ORDER

The "denial of disability benefits will be overturned only if it is not supported by substantial evidence, or if it is based on legal error." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1996). Because the Court finds the ALJ applied the correct legal standards and his decision that plaintiff is not disabled is supported by substantial evidence, the final decision of the Commissioner of Social Security is **AFFIRMED**. The Clerk of the Court shall enter judgment accordingly and terminate the case.

**IT IS SO ORDERED**.

Dated: August 3, 2022

Hon. Karen S. Crawford
United States Magistrate Judge